UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Collectanea J. Limited, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>The Partnerships And )<br>Unincorporated Associations )<br>Identified On Schedule "A" )<br>)<br>   Defendant. ) | Case No. 24-cv-07080 |

**DEFENDANT'S EMERGENCY MOTION TO VACATE DEFAULT JUDGMENT AND
FOR IMMEDIATE RELEASE OF FROZEN ASSETS
<u>PURSUANT TO FED. R. CIV. P. 60(b) AND N.D. ILL. L.R. 5.4</u>**

Defendant "Superstore Deals" ("Defendant"), by and through undersigned counsel, respectfully and on an emergency basis moves this Court pursuant to Federal Rule of Civil Procedure 60(b)(1), (3), (4), and (6), and Northern District of Illinois Local Rule 5.4, to vacate the default judgment entered against Defendant on or about October 27, 2025 (the "Default Judgment"), and for an order immediately releasing and unfreezing all of Defendant's accounts—including but not limited to Defendant's eBay and PayPal accounts—that remain frozen or restricted as a result of the proceedings in this case. In support thereof, Defendant states as follows:

**I. INTRODUCTION**

This Motion arises from a Schedule A trademark case in which Plaintiff obtained a default judgment and has now seized a total of $2,914.99 from Defendant's accounts—$1,001.37 in the initial seizure through eBay and an additional $1,913.62 seized from Defendant's PayPal account as recently as February 3, 2026—despite never verifying Defendant's identity, despite Defendant's documented attempts to respond to Plaintiff's counsel in order to procure a fair settlement, and

1

despite Plaintiff's counsel twice engaging in a pattern of accepting correspondence, ceasing communication, and then seizing funds.

This pattern repeated itself with Defendant's current counsel. From December 14 through December 19, 2025, undersigned counsel corresponded directly with Plaintiff's counsel, provided information requested, and explained in detail the legal and factual bases for vacating the default judgment. Plaintiff's counsel stopped responding on December 19, 2025. Then, on February 3, 2026—forty-six (46) days of silence later—Plaintiff caused an additional $1,913.62 to be seized from Defendant's PayPal account. This is not the conduct of a party acting in good faith; it is the conduct of a party using default judgments as an extraction tool.

Defendant brings this Motion on an emergency basis because Defendant's accounts remain frozen and Plaintiff continues to actively seize funds—most recently on February 3, 2026. Defendant's eBay and PayPal accounts, which are essential to Defendant's livelihood and the operation of Defendant's business, have been restricted since the entry of the ex parte TRO in November 2024. The continued freezing of these accounts causes irreparable harm to Defendant with each passing day: Defendant cannot receive payments, cannot access earned funds, and cannot conduct business. The most recent seizure of $1,913.62 on February 3, 2026—executed while Plaintiff's counsel was ignoring correspondence from Defendant's counsel—demonstrates that absent emergency relief from this Court, Plaintiff will continue to drain Defendant's accounts. Immediate judicial intervention is necessary to prevent further irreparable harm.

This case presents procedural irregularities strikingly similar to those condemned by this District in *Opulent Treasures, Inc. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint*, No. 23-cv-14142 (N.D. Ill. Apr. 8, 2024), where the court awarded nearly $100,000

in attorneys' fees to a defendant improperly swept into a Schedule A case. The Seventh Circuit has a "well-established policy favoring a trial on the merits over a default judgment." Cracco v. Vitran Express, Inc., 559 F.3d 625, 631 (7th Cir. 2009). Here, that policy applies with particular force.

## II. FACTUAL BACKGROUND

### A. The Schedule A Complaint and Initial Proceedings

1. Plaintiff filed its trademark action as a Schedule A case, naming numerous defendants including an online storefront operating under the name "Superstore Deals." As this District has recognized, Schedule A cases "are typically filed against a group of sellers whose assumed names are listed on an attachment to the complaint." *Oakley, Inc. v. P'ships & Unincorporated Ass'ns*, 2021 WL 308882, at *1 (N.D. Ill. Jan. 30, 2021).

2. On November 20, 2024, Plaintiff obtained an *ex parte* temporary restraining order the "TRO"), and froze accounts associated with the listed storefronts, including eBay and PayPal accounts belonging to Defendant

3. When Defendant learned through eBay and PayPal notifications that their accounts had been frozen and could no longer receive and/or withdraw payments, it was also the first time Defendant learned of the TRO. This caused a major disruption to Defendant's business, as well as crippling their person finances that they need to live, an unjust disruption that continues to this day.

### B. Defendant's First Attempt to Respond (February-April 2025)

4. Upon learning of the asset freeze, Defendant contacted Plaintiff's counsel in February 2025 to resolve the matter and establish their identity.

3

5. Plaintiff's counsel responded by requesting extensive personal information, including a video interview, to "verify" Defendant's identity—an admission that Plaintiff did not actually know whom they had sued. *See* **Exhibit A.**

6. Defendant provided identifying information, including social media accounts. However, Defendant declined to participate in what appeared to be an invasive information-gathering expedition requiring additional sensitive personal data.

7. In April 2025, further correspondence occurred between Defendant and Plaintiff's counsel.

8. On April 1, 2025, Plaintiff's counsel unilaterally declared the matter "closed" via email correspondence. *Id.*

C. **Plaintiff's Misleading Declaration and First Seizure**

9. Twenty-four (24) days after declaring the matter "closed," on or about April 25, 2025, Plaintiff's counsel filed a declaration under penalty of perjury representing to this Court that "Defaulting Defendants" had not filed a responsive or dispositive pleading, or filed an appearance.

10. However, this declaration failed to disclose material facts: (a) Defendant had contacted Plaintiff's counsel; (b) Plaintiff's counsel had expressed uncertainty about Defendant's identity; (c) Plaintiff's counsel had requested verification itself never completed; and (d) Plaintiff's counsel had unilaterally declared the matter "closed" nearly a month prior—essentially ensuring Plaintiff's ability to include Defendant as a "Defaulting Defendant", despite Defendant having verified their identity, and despite Defendant's numerous attempts to reach a settlement.

11. Shortly after the Default Judgment was entered, on November 20, 2025, Plaintiff caused $1,001.37 to be seized from Defendant's eBay account pursuant to the default judgment.

4

12. Shockingly, the notice from eBay draining Defendant's account stated: "Payment to plaintiff as ordered by the court in the final judgment order in Collectanea J Limited case 24-cv-7080. For more info contact plaintiff's attorney at lawsuit@fordbanister.com". **Exhibit B.**

**D. Defense Counsel's Correspondence (December 14-19, 2025)**

13. After retaining counsel, Defendant moved promptly to address the default. From December 14 through December 19, 2025, undersigned counsel corresponded directly with Plaintiff's counsel regarding the default judgment.

14. During this correspondence, undersigned counsel: (a) identified himself as counsel for Defendant; (b) provided the information Plaintiff's counsel requested; (c) explained the legal and factual bases for vacating the default judgment, including the identity verification paradox and the misleading declaration; and (d) requested that Plaintiff voluntarily agree to vacatur and return of the seized funds.

15. Plaintiff's counsel engaged in this correspondence for five days, then abruptly stopped responding on December 19, 2025. Plaintiff's counsel has not responded to that final communication from undersigned counsel in the forty-six (46) days since.

**E. The Second Seizure (February 3, 2026)**

16. On February 3, 2026—while Plaintiff's counsel had ignored correspondence from Defendant's counsel—Plaintiff caused an additional $1,913.62 to be seized from Defendant's PayPal account. *See* **Exhibit C.**

15. Plaintiff has now seized a total of $2,914.99 from Defendant's accounts, all while admittedly never having verified Defendant's identity, and despite both Defendant and Defendant's counsel having repeatedly attempted to resolve this matter.

5

**F. The Pattern**

16. The pattern is unmistakable:

*First cycle:* Defendant contacts Plaintiff's counsel (February-April 2025). Plaintiff's counsel requests verification, Plaintiff's counsel declares matter "closed" (April 1, 2025), Plaintiff files misleading declaration and seizes $1,001.37.

*Second cycle:* Defense counsel contacts Plaintiff's counsel (December 14-19, 2025), Plaintiff's counsel engages for five days, Plaintiff's counsel stops responding (December 19, 2025), Plaintiff seizes an additional $1,913.62 (February 3, 2026).

17. This is not the conduct of a trademark holder protecting its rights, it is using ex parte proceedings and default judgments as a revenue-extraction mechanism, seizing funds from individuals whose identity the Plaintiff themselves have never even verified.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from a final judgment for: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

The Seventh Circuit has held that default judgments are disfavored and that courts should resolve cases on the merits whenever reasonably possible. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630-31 (7th Cir. 2009); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984). Courts consider three factors: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco*, 559 F.3d at 630 (quoting *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007)). These factors are applied with a "lenient standard." *Id*. at 631.

6

Where a judgment is void, "the Court has a non-discretionary duty to grant relief therefrom, irrespective of any delay on the part of the defendant." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011); *see also Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986); *Taft v. Donellan Jerome, Inc.,* 407 F.2d 807, 808 (7th Cir. 1969). "[A] void judgment is one which, from its inception, was a complete nullity and without legal effect." *Lubben v. Selective Serv. Sys.*, 453 F.2d 645, 649 (1st Cir. 1972).

## IV. ARGUMENT

### A. The Default Judgment Is Void (Rule 60(b)(4))

"A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or where it acted in a manner inconsistent with due process of law." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). Here, Plaintiff's own correspondence establishes that they never confirmed the identity of the defendant against whom they obtained judgment.

Plaintiff's complaint names "Partnerships and Unincorporated Associations," yet seized funds from an individual human being whose identity Plaintiff's counsel has repeatedly admitted they never verified. A valid default judgment requires, at minimum, that the plaintiff know whom they are defaulting. The logical impossibility of Plaintiff's position is patent: Plaintiff cannot coherently maintain both that they needed identity verification (which they requested and admittedly never completed) and that they properly obtained a default judgment against a verified defendant.

This is compounded by the fact that even after Defendant retained counsel--and even after counsel provided information and explained the bases for vacatur--Plaintiff did not respond. Instead, Plaintiff seized additional funds. If Plaintiff had any reasonable basis to believe this

default was proper, they would have communicated that position to opposing counsel. Their silence, followed by a second seizure, speaks volumes.

### B. The Default Judgment Was Obtained Through Misrepresentation (Rule 60(b)(3))

Relief under Rule 60(b)(3) is appropriate where a judgment was obtained through "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Plaintiff's counsel's declaration to this Court stated that "Defaulting Defendants" had not responded. This representation was materially misleading.

Defendant had responded—Plaintiff's counsel simply had not accepted who Defendant was before unilaterally declaring the matter "closed" and proceeding to default. In an ex parte proceeding, a party owes the Court a heightened duty of candor. *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (courts grant ex parte TROs only under "extremely limited" circumstances because they "are vulnerable to abuse").

Plaintiff's counsel's failure to disclose that (a) a defendant had contacted counsel, (b) counsel had expressed uncertainty about that defendant's identity, (c) counsel had requested verification it never completed, and (d) counsel had unilaterally declared the matter "closed" constitutes the type of misconduct warranting relief under Rule 60(b)(3). These omissions deprived this Court of information material to the default judgment analysis.

### C. Excusable Neglect Warrants Relief (Rule 60(b)(1))

The Supreme Court has articulated a flexible standard for excusable neglect, considering "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Pioneer factors include: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial

8

proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*.

Here, Defendant contacted Plaintiff's counsel promptly upon learning of the asset freeze. Defendant provided identifying information. Plaintiff's counsel then declared the matter "closed"--a communication that would reasonably lead any person to believe no further action was required. Defendant received no further communication until $1,001.37 was seized months later. Under *Pioneer*, this constitutes excusable neglect.

### D. The Cracco Factors Mandate Vacatur

Applying the three-factor test from *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009), each factor weighs decisively in Defendant's favor:

**1. Good Cause for Default.** Defendant was told the matter was "closed." This is textbook good cause—Defendant reasonably relied on opposing counsel's representation that no further action was needed. The Seventh Circuit has recognized that Rule 55(c) requires "good cause for the judicial action, not good cause for the defendant's error." *Cracco*, 559 F.3d at 631. Here, the "cause" was Plaintiff's counsel's own representation.

**2. Quick Action to Correct.** Defendant retained counsel promptly upon learning of the fund seizure. Counsel commenced correspondence with Plaintiff's counsel within days, from December 14-19, 2025. This Motion follows as soon as it became apparent that Plaintiff's counsel was not engaging in good-faith resolution—a fact confirmed by the second seizure on February 3, 2026. See *id*. at 631 (finding timeliness where defendant acted within days of learning of default).

**3. Meritorious Defense.** Defendant has meritorious defenses: she is not affiliated with any counterfeiting operation and was improperly swept into a Schedule A dragnet. Plaintiff's own admission that it never verified Defendant's identity confirms this defense. "A meritorious defense

9

is one that, if established at trial, would constitute a complete defense." *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989). Defendant need only present a defense that is not "so conclusory as to be fatal." *Cracco*, 559 F.3d at 631.

### E. Extraordinary Circumstances Warrant Relief (Rule 60(b)(6))

Rule 60(b)(6) provides a "grand catch-all" for "any other reason that justifies relief." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). The extraordinary circumstances here include: (1) the repeated pattern of engagement followed by seizure; (2) the seizing of funds from a defendant whose identity was never verified; (3) the misleading ex parte declaration; (4) the refusal to engage with defense counsel in good faith; and (5) the second seizure on February 3, 2026 while this matter was pending resolution. Taken together, these facts present "extraordinary circumstances" warranting relief. *See id.*

### F. Plaintiff Will Suffer No Prejudice

Plaintiff will suffer no prejudice from vacatur. Plaintiff's own counsel has admitted the amount at issue is "hardly worth these email exchanges much less any time in litigation." The Seventh Circuit has held that "delay in and of itself does not constitute prejudice; the plaintiff must show that the delay will result in the loss of evidence, create difficulties in discovery, or provide greater opportunity for fraud and collusion." *Pretzel & Stouffer v. Imperial Adjusters*, Inc., 28 F.3d 42, 46 (7th Cir. 1994). No such showing can be made here.

## V. THE OPULENT TREASURES PRECEDENT

This District's decision in *Opulent Treasures, Inc. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint*, No. 23-cv-14142 (N.D. Ill. Apr. 8, 2024), is directly on point. In that case, Judge Valderrama awarded $98,276.20 in attorneys' fees and costs to a defendant improperly

included in a Schedule A trademark case. The court described the underlying TRO as "illegitimate," found that a "reasonable inquiry" could have prevented the harm, and rejected plaintiff's argument that fees should be limited to lost interest. *Id*. at *2-3.

The circumstances here are analogous--indeed, arguably worse. In *Opulent Treasures*, plaintiff dismissed the improperly named defendants once it "learned of their affiliation" with another entity. Here, Plaintiff communicated directly with Defendant, initiated identity verification it never completed, declared the matter "closed," proceeded to default and seize funds, then repeated the identical pattern with Defendant's counsel—engaging for five days before going silent and seizing additional funds. If *Opulent Treasures* warranted a $98,276.20 fee award, this case warrants vacatur, return of the $2,914.99 seized, a fee award, and dismissal.

## VI. IMMEDIATE RELEASE OF FROZEN ASSETS

In addition to vacating the Default Judgment, Defendant respectfully requests that this Court immediately order the release and unfreezing of all of Defendant's accounts that remain frozen or restricted as a result of the ex parte TRO and subsequent proceedings in this case, including but not limited to Defendant's eBay and PayPal accounts.

The continued freezing of Defendant's accounts is causing irreparable harm. Defendant's accounts have been frozen since November 2024—over fourteen (14) months—based on an ex parte TRO obtained against a defendant whose identity Plaintiff has never verified. As demonstrated above, the Default Judgment underlying the asset freeze is void, was obtained through misrepresentation, and is subject to vacatur under multiple subsections of Rule 60(b). There is no legitimate basis for Plaintiff to maintain a freeze on Defendant's accounts while this Motion is pending, particularly given that: (a) Plaintiff has already seized $2,914.99 from Defendant's accounts; (b) Plaintiff's own counsel characterized the amount at issue as "hardly

11

worth these email exchanges much less any time in litigation"; and (c) Plaintiff has demonstrated a pattern of seizing funds rather than engaging in good-faith resolution.

Courts have broad equitable authority to modify or dissolve asset freezes, particularly where the underlying judgment is subject to serious challenge. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999). Where, as here, the frozen assets belong to an individual whose identity was never verified, whose accounts have been frozen for over fourteen months, and who has suffered ongoing and compounding financial harm, the equities overwhelmingly favor immediate release. The continued freeze serves no legitimate purpose; it merely enables Plaintiff to continue extracting funds from an improperly defaulted defendant.

Defendant therefore requests that, pending resolution of this Motion, the Court enter an order immediately directing eBay, PayPal, and any other third-party platforms or financial institutions to release all holds, freezes, and restrictions on Defendant's accounts imposed pursuant to the TRO, preliminary injunction, or Default Judgment in this case.

## **VII. CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court:

(1) Vacate the default judgment entered against Defendant;

(2) Immediately order the release and unfreezing of all of Defendant's eBay, PayPal, and any other accounts frozen or restricted as a result of the TRO, preliminary injunction, or Default Judgment in this case;

(3) Order Plaintiff to return the $2,914.99 improperly seized from Defendant's accounts ($1,001.37 from the initial seizure and $1,913.62 from the February 3, 2026 seizure of Defendant's PayPal account);

(4) Award Defendant reasonable attorney's fees for the costs associated with this Motion;

(5) Dismiss Defendant from this action with prejudice; and

(6) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Eric W. Garavaglia, Esq.
GARAVAGLIA PLLC
Attorney No. 633139
640 S. Washington St., Suite 212
Naperville, IL 60540
(815) 347-1399
eric@garpllc.com